UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HALBERT WILSON                                    CIVIL ACTION

VERSUS                                            NO. 10-1742

SHERIFF MARLIN GUSMAN                             SECTION "A" (2)


## REPORT AND RECOMMENDATION

Plaintiff, Halbert Wilson, is a prisoner currently incarcerated in the Orleans Parish Prison system ("OPP") in New Orleans, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin N. Gusman. Wilson alleges that while incarcerated in OPP on April 3, 2010, he broke his dental plate on a rock in his meal of black-eyed peas, and he has not received adequate dental or medical care. He seeks monetary damages and an order requiring the sheriff to fix his dental plate. Record Doc. No. 1 (Complaint at ¶ V).

On September 13, 2010, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Tim Richardson, counsel for defendants. Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Wilson testified that, at the time of the <u>Spears</u> hearing, he was incarcerated in the temporary tents facility of OPP as a pretrial detainee awaiting trial on a possession of heroin charge.  He stated that he also is being held as a parole violator, but his parole had not yet been revoked at the time of the conference.

Wilson confirmed  that his claims of negligence and failure to provide appropriate dental care in this case arise from an incident that occurred on April 3, 2010.  He testified that he usually serves meals in the jail, and when he finishes serving, he eats.  He said there was a rock in his meal on that date, and he cracked one of his dentures on the rock while eating.  He stated that he had purchased the dentures himself, before he came to OPP.  He testified that he reported the incident to the watch commander, who instructed Wilson to fill out a form requesting dental treatment. Wilson said he filled out the form, but he was told that OPP officials do not provide that kind of work.

Wilson testified that the rock he bit into was in his meal of black-eyed peas. He stated that he does not claim that anyone intentionally put the rock in his food.  Instead, he testified that sometimes dirt or rocks are just in beans and the incident "just happened."  He explained that he already had dentures when he entered OPP.  He said the rock broke one front tooth out of his full upper dental plate.  Wilson testified that he is still able to use the dentures as they are, but they are now broken. He testified that the

major effect of the incident about which he complains in this suit is "not the using part . . . just the way that I appear. My appearance now is not like it was . . . that's what I'm complaining about. . . . Even though it was an accident, I know it didn't occur on purpose, I expected some type of relief." He complained that the response he received from jail officials was "a flat out 'no,' they're not gonna do anything." He said that if the broken tooth was in the back of his mouth rather than in the front, "I wouldn't have a problem," and he would wait to have it fixed when he reached a state Department of Corrections ("DOC") facility, but "it's bugging me."

Wilson testified that the two teeth on either side of the missing tooth are still in place, but he is uncomfortable with his appearance because "it looks like I'm snaggle-toothed." He said he wants the broken plate replaced because it was caused by something in food he was given at the prison. Wilson testified that the broken tooth causes him no physical pain. "It's mental, . . . it has something to do with my physical appearance. It don't have anything to do with my physical health or anything, but I mean it worries me, it bothers me a lot. It bothers me to know that I don't have it there no more, and I don't eat the beans no more, and I just mess with the potatoes and stuff because I'm scared something's gonna be in them and break the rest of my dentures. . . . I'm not saying I don't feel well or anything."

3

Wilson testified that he believes that the mental stress from his broken dental plate is causing his blood pressure to be too high.  He stated that he had asked three times in the past few months to have his blood pressure medication "reevaluated," but he has not yet seen a doctor for his blood pressure.  He said he is being given "several pills" at OPP for his blood pressure, but he believes he needs his medication adjusted.  He complained that his recent requests concerning his blood pressure medication have not been answered. Wilson added that he has been taking medication for an irregular heart beat for the past 25 years and that he has received medication for that condition while in OPP, but he needs reevaluation of the dosages.  He also testified that his blood pressure had not been checked by anyone at OPP in about a month.

As to his broken dental plate, Wilson testified that he submitted a request at OPP to see a dentist and a grievance concerning it, but "nothing happened."  He reiterated that he has never seen anyone while at OPP concerning the broken denture.

At the end of the conference, I ordered defendant to have plaintiff evaluated for both his blood pressure and dental conditions for purposes of Fed. R. Civ. P. 35.  Record Doc. No. 13.  Defendant complied, and submitted a report from Dr. Samuel Gore to me. Record Doc. Nos. 14 and 15. The report states that Wilson has been treated for hypertension while in OPP, and his blood pressure has been "well controlled," including during the court-ordered Rule 35 examination.  As to his dental examination pursuant to

4

my order, the doctor's report concludes that Wilson's broken plate is "non-urgent, . . .

purely cosmetic" and "[h]is dentures work well, . . . he is able to eat normally."  Record

Doc. No. 15.

## ANALYSIS

I.      STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action

is frivolous or malicious.'"  Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact."  Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'"  Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th

Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of

a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir. 1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a Spears hearing." Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)). However, "'[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.'" Gobert v. Caldwell, 463 F.3d 339, 347 n.24 (5th Cir. 2006) (quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995)) (internal citations omitted).

6

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. § 1915(e) and 42 U.S.C. § 1997e(c)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a

cognizable claim that his constitutional rights have been violated, even under the broadest reading.[1]

II.    MERE NEGLIGENCE

Plaintiff complains that a rock in his prison meal of black-eyed peas caused him to break his dental plate.  He concedes that this circumstance was unintentional, "it just happened."  To the extent, if any, that plaintiff asserts a claim for injuries concerning his broken dental plate, he at best asserts a negligence claim, not a claim of civil rights violations cognizable under Section 1983.  Wilson's testimony that his dental plate was broken by a rock accidentally contained in his food at best states a claim under state tort law that prison officials were negligent.  Claims arising from allegedly negligent acts do not give rise to relief under Section 1983.

The Supreme Court has held that "the Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss or injury to life, liberty or property."  Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 347 (1986).  In a number of contexts, other courts have determined that allegations amounting to negligence cannot support a Section 1983 claim.  Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993) (negligent medical care); Hare v. City of

---

[1] Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

Corinth, 74 F.3d 633, 641-42, 646 (5th Cir. 1996) (negligence insufficient to support failure to protect claim under Section 1983); Eason v. Thaler, 73 F.3d 1322, 1328-29 (5th Cir. 1996) (negligence cannot support Section 1983 action for deprivation of religious rights or for an Eighth Amendment claim based upon prison officials' alleged gross negligence in permitting a gas leak to occur); Doe v. Taylor Indep. Sch. Dist., 975 F.2d 137, 142 (5th Cir. 1992), vacated on other grounds, 15 F.3d 443 (5th Cir. 1994) ("Even when constitutional liberty interests are implicated, not all bodily injuries caused by state actors give rise to a constitutional tort, for it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution.").

Prison officials therefore cannot be liable under Section 1983 for the injuries, if any, resulting from a rock unintentionally contained in prison food, as alleged by plaintiff. This claim must be dismissed as legally frivolous and for failure to state a claim under Section 1983. If Wilson wants to pursue negligence claims under state law, he is free to do so in state court.

III.   MEDICAL AND DENTAL CARE

Wilson complains that he has received inadequate dental care for his broken plate and insufficient medical attention for his high blood pressure at OPP. Neither allegation is sufficient to state a claim of violation of constitutional rights cognizable under Section 1983.

9

Wilson was a pretrial detainee during the time period about which he complains. Before the Fifth Circuit's decision in <u>Hare v. City of Corinth</u>, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest.  <u>Bell v. Wolfish</u>,  441 U.S. 520, 539 (1979); <u>Cupit v. Jones</u>, 835 F.2d 82, 85 (5th Cir. 1987); <u>Mayweather v. Foti</u>, 958 F.2d 91 (5th Cir. 1992).   The inquiry was "whether the denial of medical care . . . was objectively reasonable in light of the Fourteenth Amendment's guarantee of reasonable medical care and prohibition on punishment of pretrial detainees."  <u>Pfannstiel v. City of Marion</u>, 918 F.2d 1178, 1186 (5th Cir. 1990), <u>abrogated on other grounds as recognized in Martin v. Thomas</u>, 973 F.2d 449, 455 (5th Cir. 1992).

In <u>Hare</u>, however, the Fifth Circuit held:

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

<u>Hare</u>, 74 F.3d at 650. The Fifth Circuit explained that for the <u>Bell</u> "reasonable relationship" test to be applicable, the pretrial detainee must be able to show that a prison official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

10

existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645. If the pretrial detainee is unable to prove either, the incident will be considered to be an episodic act or omission, and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply. Shepherd v. Dallas County, 591 F.3d 445, 452 (5th Cir. 2009) (citing Bell, 441 U.S. at 539; Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997); Hare, 74 F.3d at 649); Tamez v. Manthey, 589 F.3d 764, 769-70 (5th Cir. 2009) (citing Scott, 114 F.3d at 53; Hare, 74 F.3d at 649).

In Estelle, the Supreme Court held that a prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Tamez, 589 F.3d at 770; Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take

reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. 825, 847 (1994).  The

Farmer definition applies to Eighth Amendment medical claims.  Reeves, 27 F.3d at 176.

An inmate must satisfy two requirements to demonstrate that a prison official has

violated the Eighth Amendment.  If the court finds that one of the components of the test

is not met, it need not address the other component.  Davis, 157 F.3d at 1005.  "First, the

deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or

omission must result in the denial of the minimal civilized measure of life's necessities."

Farmer, 511 U.S. at 834 (quotation omitted).  Thus, plaintiff must show that defendants

"exhibited deliberate indifference to his serious medical needs."  Cooper v. Johnson, No.

09-40223, 2009 WL 4279851, at *2 (5th Cir. Dec. 1, 2009) (citing Wilson v. Seiter, 501

U.S. 294, 297 (1991)); accord Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999);

Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

Further, plaintiff must establish that defendant possessed a culpable state of mind.

Farmer, 511 U.S. at 838 (citing Wilson, 501 U.S. at 298).  A prison official cannot be

held liable "unless the official knows of and disregards an excessive risk to inmate health

or safety; the official must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. at 837; accord Tamez, 589 F.3d at 770 (citing Thompson v. Upshur County, 245 F.3d

447, 458-59 (5th Cir. 2001)).  "Such a showing requires the inmate to allege that prison

officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would <u>clearly evince a wanton disregard</u> for any serious medical needs.'" <u>Brewster v. Dretke</u>, No. 08-40685, 2009 WL 3738532, at *3 (5th Cir. Nov. 10, 2009) (quoting <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756 (5th Cir. 2001)) (emphasis added).

> The Supreme Court has recently reaffirmed that "'deliberate indifference' is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." . . . The "deliberate indifference" standard permits courts to separate omissions that amount to an intentional choice from those that are merely unintentionally negligent oversight[s].

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (quoting <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 410 (1997) (other quotations omitted)) (emphasis added); <u>accord</u> <u>Tamez</u>, 589 F.3d at 770. "'Subjective recklessness,'" as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).

In the instant case, plaintiff's pleadings, as expanded by his testimony, establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue. <u>See</u> <u>Tamez</u>, 589 F.3d at 770 (defendants' alleged refusal "to provide [prisoner] with immediate medical treatment qualifies as an 'episodic act or omission'"). Therefore, the "deliberate indifference" standard applies and Wilson must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded

that risk by failing to take reasonable measures to abate it.  In this case, plaintiff wholly fails to allege facts sufficient to satisfy the stringent "deliberate indifference" standard.

Initially, it cannot be concluded that plaintiff's blood pressure and dental conditions presented serious medical needs that posed a substantial risk of harm during Wilson's incarceration in OPP.  This complaint concerning either condition does not rise to the level of a <u>serious</u> medical need for purposes of constitutional analysis.  <u>Dickson v. Colman</u>, 569 F.2d 1310, 1311 (5th Cir. 1978) (no serious medical need was demonstrated where the plaintiff's high blood pressure presented no "true danger" or "serious threat" to his health).  <u>See</u> <u>Harrison v. Barkley</u>, 219 F.3d 132, 137 (2d Cir. 2000) ("Ordinarily, a tooth cavity is not a serious medical condition" and treatment "can safely be delayed."); <u>Martin v. Tyson</u>, 845 F.2d 1451, 1457-58 (7th Cir. 1988) (delay in treating broken tooth not sufficiently serious); <u>Mosely v. Highsmith</u>, No. 4:07-CV-1578, 2008 WL 294484, at *2 (E.D. Mo. Jan. 31, 2008) (installing a crown not a serious medical need); <u>O'Connor v. McArdle</u>, No. 04-CV-314, 2006 WL 436091, at *6, *9 (N.D.N.Y. Feb. 22, 2006), <u>aff'd</u>, 217 F. App'x. 81 (2d Cir. 2007) (Inmate's request for a replacement permanent bridge was not a serious medical need when he received ongoing dental treatment, his dentist did not recommend a replacement bridge and plaintiff did not allege any demonstrable physical injury or effect on his activities of daily living.). Wilson's high blood pressure had been controlled with medication at OPP.  His broken

dental plate is purely cosmetic. Neither qualifies as a serious medical need for constitutional purposes.

Even assuming, however, without concluding that plaintiff's condition presented serious medical need for constitutional purposes, Wilson has alleged facts, confirmed by his testimony and the medical records, that negate any inference that defendants were deliberately indifferent to plaintiff's serious medical needs in the constitutional sense. See, e.g., Banks v. York, 515 F. Supp. 2d 89, 103-04 (D.D.C. 2007) (Prison officials' failure to provide inmate with replacement crown was not deliberate indifference when dentist treated prisoner with antibiotics and offered to extract affected teeth.); O'Connor, 2006 WL 436091, at *10 (Even assuming that plaintiff had a serious medical need, no deliberate indifference existed when he was seen promptly by a dentist, but refused the treatment offered, continued to see the dentist and to receive pain medication, and eventually received an alternative procedure.); Turk v. Thomas, 121 Fed. Appx. 24, 2005 WL 32817, at *1 (5th Cir. 2005)) (There were no constitutional violations when first plaintiff's injury was not severe enough to warrant medical attention and healed on its own in a few days).

Although Wilson has alleged delay in receiving medical care in that he did not receive the treatment he thought was necessary and he has expressed dissatisfaction with the extent or effectiveness of his overall treatment, none of his allegations rise to the level

of deliberate indifference necessary to establish a constitutional violation cognizable

under Section 1983.

> [T]he decision whether to provide additional treatment is a classic example
> of a matter for medical judgment.  A showing of deliberate indifference
> requires the prisoner to submit evidence that prison officials refused to treat
> him, ignored his complaints, intentionally treated him incorrectly, or
> engaged in any similar conduct that would clearly evince a wanton
> disregard for any serious medical needs.  Deliberate indifference is an
> extremely high standard to meet.

Gobert, 463 F.3d at 346 (footnotes, citations and internal quotations omitted).  No such

showing has been made on the current record.

Mere delay in receiving care is not in and of itself a constitutional violation.

Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006); Mendoza, 989 F.2d at 195; Wesson

v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990).  Regardless of the length of delay,

plaintiff at a minimum must show deliberate indifference to serious medical needs.

Wilson, 501 U.S. at 298.  No such showing can be made in this case in light of the

extensive medical care Wilson has received during his pre-trial incarceration.

Contentions like Wilson's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim.  "[A]lthough inadequate medical treatment may, at a certain point, rise to the

level of a constitutional violation, malpractice or negligent care does not."  Stewart v.

Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted); see Rowe v. Norris, 198

Fed. Appx. 579, 2006 WL 2711945, at *2 (8th Cir. 2006) (no constitutional violation when inmate disagreed with physician's choice of medication); <u>Mendoza</u>, 989 F.2d at 193 (prisoner's disagreement with the type or timing of medical services provided cannot support a Section 1983 claim); <u>McQueen v. Karr</u>, 54 F. App'x 406, 2002 WL 31688891, at *1 (5th Cir. 2002) (Plaintiff's allegations "do not establish the denial of medical treatment but . . . reveal only McQueen's dissatisfaction with the treatment offered him, extraction of his injured teeth versus more expensive restorative treatment, which is insufficient to state a claim under § 1983).

Under these circumstances, plaintiff cannot state a cognizable Section 1983 claim that defendants were deliberately indifferent to his serious medical needs, relating either to his broken dental plate or his high blood pressure.  For all of the foregoing reasons, plaintiff's complaints in this case about his medical care advance a legally frivolous argument and fail to state a claim for relief under Section 1983.

IV.    <u>LIABILITY OF SHERIFF GUSMAN</u>

Wilson makes no claim that Sheriff Gusman, the only named defendant, was personally involved in any of the alleged acts or omissions upon which his claims are based.  "There is no respondeat superior liability under section 1983." <u>Eason v. Thaler</u>, 73 F.3d 1322, 1327 (5th Cir. 1996); <u>accord</u> <u>Field v. Corrections Corp.</u>, 364 F. App'x 927, 2010 WL 517679, at *1 (5th Cir. 2010); <u>Cox v. Irby</u>, 281 F. App'x 390, 391 (5th Cir.

2008); Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006).  Thus, this defendant cannot be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for plaintiff's injury, if any, were in his employ or under his supervision.  Sanders v. English, 950 F.2d 1152, 1160 (5th Cir. 1992); Baskin v. Parker, 602 F.2d 1205, 1208 (5th Cir. 1979); Barksdale v. King, 699 F.2d 744, 746 (5th Cir. 1983).

To hold this defendant liable, plaintiff must establish either that he was "personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [this defendant] . . . and the alleged constitutional violation." Douthit v. Jones, 641 F.2d 345, 346 (5th Cir. 1981); accord Cox, 281 F. App'x at 391 ; Kohler, 470 F.3d at 1115.  "It is facially evident that this test cannot be met if there is no underlying constitutional violation." Rios v. City of Del Rio, 444 F.3d 417, 425-26 (5th Cir. 2006) (citing Breaux v. City of Garland, 205 F.3d 150, 161 (5th Cir. 2000)).  In the instant action, plaintiff has failed to establish either that defendant was personally involved in any acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of defendants and the alleged constitutional violation.

A supervisory official may be held liable for his subordinates' actions only if the official implemented an unconstitutional policy that causally resulted in plaintiff's injury.

Monell v. Dep't of Social Servs., 436 U.S. 658, 691-95 (1978); Thompson v. Johnson, 348 F. App'x 919, 921 (5th Cir. 2009) (citing Mouille v. City of Live Oak, 977 F.2d 924, 929 (5th Cir. 1992)); Gates v. Texas Dep't of Protective & Regulatory Servs., 537 F.3d 404, 435 (5th Cir. 2008). Without alleging a particular custom, usage or policy for which defendant [Sheriff Gusman] can be held constitutionally liable, plaintiff fails to state a claim for relief under Section 1983. Monell, 436 U.S. at 691-95; Thompson, 348 F. App'x at 921-22; Mouille, 977 F.2d at 929.

"To hold a supervisory official liable for the acts of a subordinate, Wilson must show that "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir.1998). To state a failure to protect claim under § 1983, Wilson must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995). For an official to act with deliberate indifference for purposes of either claim, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Payne v. Pickett,

19

246 Fed. Appx. 884, 889-90, 2007 WL 2537839, *5 (5th Cir. 2007).  None of the foregoing essential elements of a supervisory liability claim under Section 1983 have been established on this record.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this ____22nd____ day of December, 2010.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.